UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bashir Khalif Abdi, | Case No. 25-cv-4559 (KMM/DJF) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Eric Klang, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Bashir Khalif Abdi's Amended Petition for a Writ of Habeas Corpus (ECF No. 13) ("Petition").  Mr. Abdi is citizen of Somalia who entered the United States from Mexico without inspection on September 23, 2024.  (ECF No. 11-1 at 1-4.)  Within minutes after Mr. Abdi entered the country, United States Border Patrol apprehended him and transferred him to a detention facility.  (*Id.*)

**I.    Background**

On October 2, 2024, Mr. Abdi requested asylum due to fear of persecution if he was deported to Somalia or South Africa, his last country of residence.  (*Id.* at 1; ECF No. 13 at 25.)  On October 16, 2024, the Department of Homeland Security ("DHS") served Mr. Abdi a Notice to Appear directing him to appear before an immigration judge for removal proceedings on October 31, 2024.  (ECF No. 11-2 at 1-2.)  Two days later, Immigration and Customs Enforcement ("ICE") released Mr. Abdi on "Interim Parole with enrollment in the Alternatives to Detention

(ATD) program."[1]  (ECF No. 11 at 3.)  Mr. Abdi submitted an Application for Asylum and for Withholding of Removal on December 6, 2024.  (ECF No. 13 at 40.)

During the next year, Mr. Abdi violated the terms of his interim parole multiple times, by missing two virtual office visits and triggering a GPS monitor strap tamper alert.  (ECF No. 11 at 3.)  ICE arrested Mr. Abdi on December 4, 2025 to continue his removal proceedings and have denied him an opportunity to request release on bond.  *(Id*.; ECF No. 13 at 1.)  Mr. Abdi is currently detained at the Crow Wing County Jail in Brainerd, Minnesota.  (ECF No. 13 at 3.)

Respondents include Eric Klang, the Sheriff who oversees the Crow County Jail, and various federal officials charged with enforcing the nation's immigration laws.  (*Id.* at 3-4.)  Mr. Abdi's Petition asks the Court to order "Respondents to set bond for Petitioner and release Petitioner immediately."  (ECF No. 13 at 13.)  Additionally, the Petition asks the Court to: (1.) declare Mr. Abdi's detention unconstitutional; (2.) enjoin Respondents from transferring Mr. Abdi outside the District of Minnesota before a Court-ordered bond hearing takes place; (3.) enjoin DHS from staying any bond; and (4.) award attorney's fees and costs under the Equal Access to Justice Act, "and on any other basis justified under law."  (*Id.*)  For the reasons that follow, the Court recommends denying the Petition.

## II.     Analysis

Mr. Abdi's Petition is premised on the notion that he is being detained pursuant to 8 U.S.C. § 1225(b)(2).  Section 1225 is part of the nation's immigration policy "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country

---

[1] ATD is a supervised release program operated by ICE that "enables aliens to remain in their communities – contributing to their families and community organizations, and as appropriate, concluding their affairs in the U.S. – as they move through immigration proceedings or prepare for departure."  *Alternatives to Detention*, Immigration and Customs Enforcement, https://www.ice.gov/features/atd (last visited December 30, 2025).

is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Under that Section, "an alien who arrives in the United States or is present in this country but has not been admitted is treated as an applicant for admission." *Id.* (citation modified). "[A]pplicants for admission fall into one of two categories, those covered by [Section] 1225(b)(1) and those covered by [Section] 1225(b)(2)." *Id.* Both categories of aliens are subject to mandatory detention under Section 1225. *See Belsai D.S. v. Bondi*, 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *1 (D. Minn. Oct. 1, 2025) (citing 8 U.S.C. § 1225(b)).

**Section 1225(b)(1)** allows for expedited removal without further proceedings and mandates detention of two groups of aliens. The first group includes those who: (1.) are arriving in the United States and; (2.) are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(i)). The second group includes aliens who: (1.) are determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation; (2.) have not been admitted or paroled in the United States; (3.) have "not affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (4.) the Attorney General has designated as being subject to expedited removal. 8 U.S.C. § 1225(b)(1)(A)(iii).

However, if an alien who falls within either of these groups wishes to apply for asylum, he may avoid immediate removal and will instead be referred for further proceedings to consider his asylum claim, including an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii). If the asylum officer determines that the alien has a credible claim, "the alien *shall be detained* for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added). In

other words, an alien who is otherwise subject to Section 1225(b)(1) and who applies for asylum is subject to mandatory detention until the application is resolved.[2]  *See Jennings*, 583 U.S. at 297.

**Section 1225(b)(2)** "serves as a catchall provision" that applies to all other "applicants for admission" who are not covered by Section 1226(b)(1) and who are actively "seeking admission" into the United States.  *Jennings*, 583 U.S. at 287; *Belsai D.S.*, 2025 WL 2802947, at *6.

The Petition ought to be denied because Mr. Abdi is not being detained under Section 1225(b)(2); rather, he is being detained under Section 1225(b)(1).  Border Patrol apprehended Mr. Abdi seven miles from the United States-Mexico border within minutes of his crossing.  (ECF No. 11-1 at 3-4.)  He admitted that he entered the country "without the necessary legal documents to enter, pass through, or remain."  (*Id.* at 4.)  He thus was found inadmissible for lack of valid documentation, had not been admitted or paroled into the United States, and could not show he had been in the United States continuously for the 2-year period prior to his apprehension and determination of inadmissibility.  (*Id.*)  Furthermore, the Attorney General has had a long-standing policy of applying Section 1225(b)(1) to aliens who are encountered "within fourteen days of arriving in the United States" and "within 100 air miles of a land border."  *Make the Road New York v. Noem*, No. 25-5320, 2025 WL 3563313, at *2 (D.C.C. Nov. 22, 2025) (citing policy

---

[2] To be clear, the Court does not find that all undocumented asylum applicants necessarily are "seeking admission" within the meaning of Section 1225(b).  Nor does the Court conclude that all such asylum applicants are subject to detention pursuant to Section 1225(b)(1)(B)(ii).  The mandatory detention provision applies only to those undocumented asylum applicants who are otherwise "arriving in the United States," *see* 8 U.S.C. § 1225(b)(1)(A)(ii), or who have not been physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility and have been designated by the Attorney General as subject to Section 1225(b)(1), 8 U.S.C. § 1225(b)(1)(A)(iii).

statements).³  Mr. Abdi's detention near the border falls within that designation.  (*See* ECF No. 11-1 at 4, "[Mr. Abdi] was apprehended within 14 days of entering the United States and within 100 air miles of the United States/Mexico international boundary.".)  He was therefore subject to mandatory detention and expedited removal under Section 1225(b)(1)(A)(iii) because he was inadmissible, had not been admitted or paroled into the country, could not prove a continuous 2-year presence prior to his apprehension, and the Attorney General had designated him as subject to Section 1225(b)(1).

The expedited removal process was suspended because Mr. Abdi applied for asylum (ECF No. 11 at 2).  However, Section 1226(b)(1) unequivocally states that Mr. Abdi is subject to mandatory detention while his asylum application is under consideration.   8 U.S.C. § 1225(b)(1)(B)(ii); *see also Jennings*, 583 U.S. at 287.

The fact that Mr. Abdi was released on "interim parole" (ECF No. 11 at 3) does not alter the Court's conclusion.  Mr. Abdi appears to argue that because DHS placed him on parole under an ATD program, the terms of Section 1225 no longer apply to him because his December 2025 arrest occurred within the interior of the United States, and not near the border during his entry into the United States.  (ECF No. 13 at 6-7.)  But this interpretation of the statutory scheme is contrary to its plain terms and structure.  8 U.S.C. § 1182 (d)(5)(A) grants the Secretary of Homeland Security the discretion to temporarily parole any alien "on a case-by-case basis for urgent humanitarian reasons or significant public benefit."  *See also Jennings*, 583 U.S. at 288

---

³ In January 2025, the Attorney General expanded the application of Section 1225(b)(1) by eliminating the geographical and 14-day time limitation.  *See* Designating Aliens for Expedited Removal, 90 Fed. Reg. 8,139, 8140 (Jan. 24, 2025) (effective date Jan. 21, 2025).  That policy change is currently stayed pending an appeal to the Court of Appeals for the District of Columbia.  *See Make the Road New York*, 2025 WL 3563313, at *3.  Since the Court concludes Mr. Abdi would be subject to Section 1225(b)(1) under the previous guidance, whether the policy change survives judicial scrutiny or not is immaterial.

(holding specifically that "applicants for admission [under Section 1225] may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'"). Section 1182 (d)(5)(A) further states that, "parole shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien *shall forthwith return or be returned to the custody from which he was paroled* …." *Id.* (emphasis added).  Thus, parole into an ATD program allows an alien to be released under location monitoring or other conditions, but when that parole ends, he must be returned to the custody he was in before parole was granted.  Moreover, the statute states that once the alien is returned to such custody "his case shall continue to be dealt with in the same manner as that of any other *applicant for admission* to the United States."  8 U.S.C. § 1182 (d)(5)(A) (emphasis added). "Applicant for admission" is the phrase used in Section 1225 to define the universe of aliens who are subject to its provisions.  *See* 8 U.S.C. § 1225(a)(1).  Use of this phrase makes intuitive sense within the statutory structure.  Section 1225 is meant to regulate the admission of aliens at the border and ports of entry, many of whom are subject to mandatory detention if they lack valid documents for admission.  However, Congress recognized the need for exceptions and flexibility and provided Section 1182(d)(5)(A) to allow DHS to release certain aliens who fall within this mandatory detention scheme on a case-by-case basis.  *See Florida v. United States*, 660 F.Supp. 3d 1239, 1280 (N.D. Fla. 2023) (concluding Section 1225(b) requires detention unless Section 1182(d)(5) is justifiably applied); *Jennings*, 583 U.S. at 288 (same).  But parole does not move an alien outside the scope of Section 1225; it merely suspends the statute's detention mandate.  When

Mr. Abdi's parole was terminated,[4] he once again became subject to mandatory detention under Section 1225(b)(1).  The Court recommends the Petition be denied for these reasons.[5]

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Bashir Khalif Abdi's Amended Petition for a Writ of Habeas Corpus (ECF No. 13) be **DENIED**.

Dated:  December 31, 2025

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

---

[4] The Court does not address whether revocation of Mr. Abdi's interim parole satisfied the dictates of the Fifth Amendment's Due Process Clause or other federal statutes, because he has not raised those arguments.  *Cf. E.A.P.C. v. Wofford*, 2025 WL 3289185, at *9-12 (E.D. Cal. Nov. 25, 2025) (granting preliminary injunction and ordering a parole revocation hearing); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1143-47 (D. Or. 2025) (granting petition for writ of habeas corpus and ordering defendants' release on the ground that parole revocation violated the Administrative Procedures Act).

[5] Mr. Abdi's contention that he is entitled to a bond hearing as a class member in *Maldonado Bautista v. Santacruz* (ECF No. 13 at 9-11) is meritless because, for the foregoing reasons, he is subject to detention under Section 1225(b)(1).  *See Maldonado*, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025) (defining the class as noncitizens in the United States without lawful status who are *not* subject to detention under Section 1225(b)(1)).