UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Bashir K. A., | No. 25-cv-4559 (KMM/DJF) |
| Petitioner, | |
| v. | **ORDER** |
| Eric Klang, et al., | |
| Respondents. | |

On December 4, 2025, agents from Immigration and Customs Enforcement (ICE) arrested Petitioner Bashir K. A. ("Bashir" or "Petitioner"). Four days later, Bashir brought this case seeking a writ of habeas corpus. (Dkt. 1.[1]) In a Report and Recommendation ("R&R") dated December 31, 2025, United States Magistrate Judge Dulce J. Foster recommended that Bashir's petition be denied. (Dkt. 16.) This Court obtained clarification of the record (Dkts. 17–19), and Bashir filed timely objections to the R&R (Dkt. 20). In light of subsequent, supplemental filings, and for the reasons that follow, the Court declines to adopt the R&R's analysis and grants Bashir's petition for a writ of habeas corpus. Fed. R. Civ. P. 72(b)(3) (providing for de novo review of an R&R when objections are filed).

## Background

Bashir is a citizen of Somalia. (Dkt. 11-1 at 2.) On September 23, 2024, he entered the United States from Mexico without inspection. (*Id.* at 1, 3–4.) He has no criminal

---

[1] Bashir later filed an Amended Petition that the Court considers to be the operative pleading. (Dkt. 13.)

1

history. (*Id.* at 7.) United States Border Patrol apprehended him shortly after he crossed the border and brought him to a detention facility. (*Id.* at 3–4.) On October 2, 2024, Bashir requested asylum due to fear of persecution if he was returned to Somalia or South Africa, his last country of residence. (*Id.* at 1; Dkt. 13 at 25.)

On October 16, 2024, the Department of Homeland Security ("DHS") served Bashir with a Notice to Appear, charging him with being removable as an "alien present in the United States without being admitted or paroled," and requiring him to appear before an immigration judge on October 31, 2024 in Calexico, California. (Dkt. 11-2 at 1 (citing Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i)).) However, on October 18, 2024, ICE granted Bashir parole into the United States under 8 U.S.C. § 1182(d)(5)(A) (Dkt. 19-1 at 1), which is commonly referred to as the "humanitarian parole" provision. It authorizes the Secretary of DHS to exercise discretion to grant entry into the United States to a noncitizen "on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). Bashir was simultaneously enrolled in the Alternatives to Detention ("ATD") program.[2] (Dkt. 19-1 at 3.)

While Bashir was released on humanitarian parole, he had "two missed virtual office visits and a GPS monitor strap tamper alert," which constituted violations of his ATD program agreement. (Dkt. 11 ¶ 11.) In early December 2025, ICE arrested Bashir to

---

[2] As explained in the R&R, "ATD is a supervised release program operated by ICE that 'enables aliens to remain in their communities – contributing to their families and community organizations, and as appropriate, concluding their affairs in the U.S. – as they move through immigration proceedings or prepare for departure.'" (Dkt. 16 at 2 n.1 (citing Immigr. & Customs Enf't, *Alternatives to Detention*, https://www.ice.gov/features/atd) (last visited Feb. 6, 2026).)

continue removal proceedings against him. (*Id.* ¶ 12.) When he filed his habeas petition, Bashir was held at the Crow Wing County Jail (Dkt. 13 at 3) but now appears to be detained at the Kandiyohi County Jail.[3]

## Discussion

A court can issue a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). That power "includes jurisdiction to hear habeas challenges to immigration-related detention." *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025). "The burden is on the petitioner to prove illegal detention by a preponderance of the evidence." *Id.*

In his petition, Bashir claims that he has been misclassified for mandatory detention under 8 U.S.C. § 1225(b)(2). (Dkt. 13 ¶ 21.) That provision only applies to "an alien who is an applicant for admission," whom an immigration officer determines "is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2). Bashir argues that he is entitled to habeas relief under the interpretation of § 1225(b)(2) reflected in *Belsai D.S. v. Bondi*, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947 (D. Minn. Oct. 1, 2025), and other similar cases. (Dkt. 15 at 3–6.) Respondents[4] claim that *Belsai* is inapplicable here,

---

[3] U.S. Immigr. & Customs Enf't, *Online Detainee Locator System*, https://locator.ice.gov/odls/#/search (last visited Feb. 9, 2026).

[4] In his petition, Bashir names four respondents. The Court uses "Respondents" in this Order to refer to the three federal officials named in the petition, excluding Respondent-Sheriff Klang, who has not filed a response.

3

where Bashir is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii). They argue that because Bashir was apprehended at or near the border, shortly after he crossed into the United States, and was subsequently granted humanitarian parole while his asylum application was pending, he was never "admitted" to the U.S. within the meaning of the INA. Therefore, according to Respondents, Bashir is an "applicant for admission" who must be detained under § 1225(b)(1) until his asylum application is adjudicated. (Dkt. 10 at 4–6.) Alternatively, Respondents argue that if Bashir is not subject to detention under § 1225(b)(1)(B)(ii), he must be detained under § 1225(b)(2) because he is "seeking admission" through his pending asylum application. (*Id.* at 7–10.) As explained below, the Court finds that Bashir is not subject to mandatory detention under either § 1225(b)(1)(B)(ii) or § 1225(b)(2).

This case presents questions of statutory interpretation, which "begin[s] with the statute's plain language, giving words the meaning that proper grammar and usage would assign them. If the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024). Understanding the meaning Congress intended to give to statutory terms requires consideration of their context. *FCC v. AT & T Inc.*, 562 U.S. 397, 405 (2011) (stating that courts interpret statutory language "in light of the terms surrounding it"). Therefore, the Court begins by examining the context and interplay of the relevant portions of immigration laws before turning to what they mean for adjudicating Bashir's petition.

### *§ 1225 and Expedited Removal Process*

There are two tracks for removal of noncitizens from the United States: (1) the "usual removal process" under § 240 of the INA (codified at 8 U.S.C. § 1229a); and (2) "more expedited [removal] procedures for certain 'applicants for admission'" under § 235 of the INA (codified at § 1225(b)(1)). *See DHS v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020). "The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed." *Id.* at 108. The expedited removal procedures "substantially shorten and speed up the removal process" in comparison to the usual procedures under § 1229a. *Make the Rd. New York v. Wolf*, 962 F.3d 612, 618 (D.C. Cir. 2020). The expedited process set forth in § 1225 is for noncitizens who are "applicants for admission."[5] *Thuraissigiam*, 591 U.S. at 108–09. An "applicant for admission" is "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted[.]'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)).

Noncitizens are subject to expedited removal proceedings under § 1225(b)(1) if they are "inadmissible" because they engaged in fraud or misrepresented a fact material to their effort to gain admission or lack the proper documentation to gain lawful entry into the United States. 8 U.S.C. § 1225(b)(1)(A)(i) (referring to inadmissibility provisions in § 1182(a)(6)(C) and § 1182(a)(7)). The expedited removal procedures apply to such an

---

[5] The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

inadmissible alien "who is arriving in the United States." 8 U.S.C. § 1225(b)(1)(A)(i). They also apply to an inadmissible alien who: (1) has "not been admitted or paroled into the United States," 8 U.S.C. § 1225(b)(1)(A)(iii)(II); (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," *id.*; and (3) "is among those whom the Secretary of Homeland Security has designated for expedited removal," *see Thuraissigiam*, 591 U.S. at 109 (citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II)).

For ease of reference, the Court refers to § 1225(b)(1)(A)(i) as the "Arriving Aliens" provision and § 1225(b)(1)(A)(iii) as the "Designation Provision." *See Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872 (JMC), 2025 WL 2192986, at *5 (D.D.C. Aug. 1, 2025) ("*CHIR*") (doing same). In sum, the expedited-removal provisions of § 1225(b)(1) "govern[] noncitizens: (1) who are inadmissible for lack of proper entry documents or because they engaged in fraud or a willful misrepresentation of a fact on their application for admission; *and* (2) who fall within either the 'Arriving Aliens Provision' or the 'Designation Provision.'" *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *10 (E.D.N.Y. Nov. 28, 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(II)).

"Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review.'" *Jennings*, 583 U.S. at 287. But applicants for admission "can avoid expedited removal by claiming asylum. If an applicant 'indicates either an intention to apply for asylum' or 'a fear of persecution,' the immigration officer "shall refer the alien

6

for an interview by an asylum officer.'" *Thuraissigiam*, 591 U.S. at 109 (quoting 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii)).

### *Mandatory Detention Under § 1225(b)*

Section 1225(b) authorizes detention of two categories of noncitizens. *See Jennings*, 583 U.S. at 287 (describing noncitizens covered by §§ 1225(b)(1) and (b)(2)). First, under § 1225(b)(1), mandatory detention may be permissible when a noncitizen indicates an intent to request asylum. Specifically, "[i]f the officer determines at the time of the [asylum application] interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Read in the context of § 1225's expedited removal procedures, if a noncitizen who falls within the Arriving Aliens or Designation Provision indicates an intent to apply for asylum, and the interviewing asylum officer determines that there is a credible fear of persecution that might support the asylum application, the noncitizen, who is also subject to expedited removal proceedings, shall be detained for further consideration of the application. 8 U.S.C. §§ 1225(b)(1)(A)(ii), (iii)(II), (b)(1)(B)(ii); *see also Jennings*, 583 U.S. at 287–88 (quoting § 1225(b)(1)(B)(ii)).

Second, § 1225(b)(2) contains a mandatory-detention provision. It provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). As another court recently explained, § 1225(b)(2) applies, for example, to:

> noncitizens who are arriving in the United States, seeking admission, and are inadmissible for some reason other than misrepresentation or failure to meet document requirements (such as those having certain types of criminal convictions or those who would pose a foreign policy risk or are associated with terrorists, the Communist party, or Nazi activity).

*Rodriguez-Acurio*, 2025 WL 3314420, at *11 (quoting *Valencia Zapata v. Kaiser*, No. 25-cv-7492, 2025 WL 2741654, at *4 (N.D. Cal. Sept. 26, 2025)). The majority of courts to have interpreted this provision have concluded it is not a broad authorization for the government to detain every undocumented noncitizen who enters the United States without permission and is found within its borders because the provision applies more narrowly to applicants for admission who are "seeking admission." *See, e.g.*, *Pedro L. v. Lyons*, No. 26-cv-00707 (MJD/ECW), 2026 WL 295386, at *3 (D. Minn. Feb. 1, 2026) ("Courts have overwhelmingly rejected Respondents' interpretation that section 1225(b)(2) requires the mandatory detention of all noncitizens living in the country who are 'inadmissible' because they entered the United States without inspection.") (quoting *Martin R. v. Noem*, No. 26-CV-168 (JMB/LIB), 2026 WL 115024, at *2 (D. Minn. Jan. 15, 2026)); *see also Castanon-Nava v. DHS*, 161 F.4th 1048, 1060–62 (7th Cir. 2025); *but see Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *4–10 (5th Cir. Feb. 6, 2026).

### *Humanitarian Parole*

A noncitizen who is subject to detention under § 1225(b)(1) or § 1225(b)(2) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" under 8 U.S.C. § 1182(d)(5)(A). *Jennings*, 583 U.S. at 288 (citing same). Commonly known as "humanitarian parole," it does not, however, count as an "admission"

to the United States, and "when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)).

### *Petitioner's Detention*

Turning to Petitioner Bashir's case, Respondents argue that Bashir is lawfully detained pursuant to § 1225(b)(1)(B)(ii) because (1) he was not "admitted" to the United States despite receiving humanitarian parole; (2) he is deemed an applicant for admission under the humanitarian-parole provision; (3) he has a pending application for asylum; and (4) § 1225(b)(1)(B)(ii) provides that he "shall be detained" while the asylum application is being considered. (Dkt. 10.) The Court is not persuaded.[6]

While Respondents are correct that humanitarian parole does not count as an "admission" to the United States and that one whose parole has expired is deemed an applicant for admission, Respondents ignore that § 1225(b)(1)(B) only applies to aliens referred for interviews under § 1225(b)(1)(A)(ii). 8 U.S.C. § 1225(b)(1)(B)(i) ("An asylum officer shall conduct interviews of aliens *referred under subparagraph (A)(ii)*, either at a port of entry or at such other place designated by the Attorney General.") (emphasis added). By its own terms, subparagraph (A)(ii) applies to aliens who fall under the Arriving Alien

---

[6] Because the Court finds that Respondents cannot place Bashir in mandatory detention under either § 1225(b)(1) or § 1225(b)(2), the Court finds it unnecessary to address Bashir's alternative argument that Respondents failed to comply with applicable regulations when they terminated his parole without an individualized determination. (Dkt. 20 at 4–6.)

9

Provision or the Designation Provision. *See* 8 U.S.C. § 1225(b)(1)(A)(ii). In other words, the "alien [who] shall be detained" within the meaning of subparagraph (B)(i) must also fit within either the Arriving Alien Provision or the Designation Provision. Bashir does not.

First, Bashir is not subject to expedited removal proceedings and mandatory detention under the Arriving Aliens Provision, for the reasons set forth in *Rodriguez-Acurio*. 2025 WL 3314420. The Court adopts the interpretation of the relevant statutory text from § 1225(a)(1)(A)(ii), its surrounding structure and context, and its limitations on which noncitizens are subject to mandatory detention under § 1225(b)(1)(B)(ii) set forth in that decision. *See id.* at *19–21. And although it is unnecessary to repeat the entirety of the *Rodriguez-Acurio* court's analysis here, the Court highlights several key conclusions. The Arriving Aliens Provision subjects an alien "who is arriving in the United States" to expedited removal proceedings. 8 U.S.C. § 1225(a)(1)(A)(ii); *see Rodriguez-Acurio*, 2025 WL 3314420, at *20 (quoting *CHIR*, 2025 WL 2192986, at *28) ("[T]he plain meaning of the word 'arriving' is being 'in the process of reaching' a destination."). Given the ordinary meaning of "arriving," it "refer[s] to a process that occurs upon physical entry into the United States, not an interminable status that attaches to a noncitizen upon arrival." *Id.* (cleaned up).

As applied to Bashir, this means he was not in the process of arriving in the United States when he was arrested on December 4, 2025, and therefore cannot be classified as an "alien . . . who is arriving in the United States." 8 U.S.C. § 1225(a)(1)(A)(ii). And, in turn, he does not fall within the "arriving aliens" category of applicants for admission who may be subjected to expedited removal procedures and mandatory detention under

§ 1225(b)(1)(B)(ii). *See Rodriguez-Acurio*, 2025 WL 3314420, at *21. By the time of his arrest, Bashir had already crossed into the United States and been living in Minnesota for over a year. *See id.* (explaining that it would be "illogical" to find that the petitioner was still in the process of "arriving" in the United States "when she has been continuously residing in the United States for more than three years after the expiration of her humanitarian parole," among other considerations).[7]

Second, the Designation Provision also does not apply to Bashir. The provision applies to an alien "who has not been admitted or paroled into the United States[.]"[8] 8 U.S.C. § 1225(a)(1)(A)(iii)(II). The most reasonable reading of this language is that the

---

[7] Although the definition of "[a]rriving alien" in 8 C.F.R. § 1.2 states that an "arriving alien remains an arriving alien even if paroled pursuant to [§ 1182(d)(5)], and even after any such parole is terminated or revoked," the INA itself does not define the term "arriving." *Rodriguez-Acurio*, 2025 WL 3314420, at *19–21. As explained in *Rodriguez-Acurio*, after the Supreme Court's decision in *Loper Bright Enterprises v. Ramondo*, 603 U.S. 369 (2024), do not defer to agency constructions, and instead "must exercise independent judgment in determining the meaning of statutory provisions[.]" *Rodrgiguez-Acurio*, 2025 WL 3314420, at *20 (quoting *Loper Bright*, 603 U.S. at 394). As the court explained in *Rodriguez-Acurio*, 8 C.F.R. § 1.2 does not change the analysis because the plain meaning of the term "arriving" in § 1225(b)(1)(A)(i) precludes a noncitizen who was initially detained at the border, but who received parole and lived in the United States from being classified as an alien who is arriving in the Untied States. 2025 WL 3314420, at *21.

[8] There does not appear to be any dispute that Bashir was not continuously present in the United States for the two-year period immediately preceding the immigration officer's determination that he was inadmissible shortly after he was apprehended near the southern border in September 2024. But the language of the Designation Provision applies to those who were not present for that two-year period *and* have not been admitted or paroled. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (authorizing the Secretary of DHS to designate as eligible for expedited removal those who have not been admitted or paroled "*and* who has not affirmatively shown . . . that [he] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility") (emphasis added).

provision subjects aliens who have never been paroled into the United States to expedited removal proceedings, but not those who have, at any point, been paroled. Again, as to this provision, the Court agrees with and adopts, without repeating in full, the thorough analysis of the *Rodriguez-Acurio* court. 2025 WL 3314420, at *14–19 (examining the text of the Designation Provision). The Court emphasizes that "the statutory text does not read that a noncitizen is eligible for expedited removal if that person '*is* not currently on parole.'" *Id.* at *15. Short of that, the Court is unpersuaded by Respondents' argument that the mandatory-detention provision in § 1225(b)(1)(B)(ii) and expedited removal proceedings set forth in § 1225 apply to someone like Bashir, who was paroled into the United States and later had his parole terminated. Consequently, this Court concludes, as others have, that "the Designation Provision forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States." *CHIR*, 2025 WL 2192986, at *22. This conclusion places a noncitizen like Bashir outside the mandatory-detention provision of § 1225(b)(1)(B)(ii).

Moreover, the Court agrees with the *Rodriguez-Acurio* court that neither the language of § 1182(d)(5)(A), nor the "entry fiction" described in *Thuraissigiam*[9] supports a conclusion that a noncitizen like Bashir is subject to mandatory detention under § 1225(b)(1)(B)(ii). *Rodriguez-Acurio*, 2025 WL 3314420, at *17–18; *see also id.* at *25–27 (distinguishing the position of the noncitizen in *Thuraissigiam* from a noncitizen who has entered the country and established connections with the United States after receiving parole). As Respondents point out, humanitarian parole is not "admission" and a noncitizen is deemed an applicant for admission once parole is terminated, but § 1182(d)(5) "does not say that parolees 'return, upon the termination or expiration of their parole, to the position of an applicant for admission standing at the threshold of entry.' . . . Nor does it say that [they] are 'restored to the status that they had at the time of parole." *Rodriguez-Acurio*, 2025 WL 3314420, at *17 (quoting *CHIR*, 2025 WL 2192986, at *24) (quotation and citation omitted).

In Respondents' Supplemental Brief, they argue that the *Rodriguez-Acurio* court's analysis of the humanitarian parole provision "departs from the plain text of

---

[9] In *Thuraissigiam*, the Supreme Court stated that noncitizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border." 591 U.S. at 139. Creation of the so-called "entry fiction" to preserve the executive's "sovereign prerogative" of governing admission to the country and finding that the Due Process Clause did not require greater recognition of rights beyond those provided by statute. *Id.* at 139–40. But Thuraissigiam was never paroled into the United States while his removal proceedings were pending; he was stopped 25 yards from the border, and, thereafter, he was subjected to continuous detention. *Rodriguez-Acurio*, 2025 WL 3314420, at *26. Given that the Court is reviewing the scope of the government's authority to detain under the language that Congress enacted, rather than considering any additional due process protections, the Court finds that the entry-fiction from *Thuraissigiam* does not control the outcome here.

13

§ 1182(d)(5)(A)" because it requires a person whose humanitarian parole has ended to "return or be returned to the custody from which he was paroled," and Bashir cannot be *returned* to "a discretionary-detention framework under § 1226(a) that never applied in the first place." (Dkt. 23 at 2, 4). The Court disagrees that this language requires mandatory detention and renders § 1226(a)'s discretionary framework completely inapplicable. First, the "returned to custody" language in the humanitarian parole provision does not "affirmatively authorize[] detention[.]" *See Rodriguez-Acurio*, 2025 WL 3314420, at *18 (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)). Second, recall that mandatory detention under § 1225(b)(1)(B)(ii) applies to an alien who is "arriving" under the Arriving Aliens provision, but § 1182(d)(5)(A) does not transform someone like Bashir into an "arriving" alien because he is no longer, in any sense, in the process of arriving in the United States. 8 U.S.C. § 1225(b)(1)(A)(ii). Third, mandatory detention under § 1225(b)(1)(B)(ii) also applies to aliens who are subject to expedited removal because they fall within the Designation Provision, but the Designation Provision only applies to an alien "who *has not been . . . paroled* into the United States," § 1225(b)(1)(A)(iii)(II) (emphasis added), and Bashir *has been paroled*. Respondents' argument would use the language in the humanitarian parole provision to rewrite the terms of § 1225(b)(1)(B)(ii), and the Court finds such a construction is inconsistent with § 1225(b)(1)'s text.

Again, this Court agrees with *Rodriguez-Acurio*, and finds that being treated like any other applicant for admission as discussed in § 1182(d)(5)(A) means "that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not

subjected to expedited removal." *Rodriguez-Acurio*, 2025 WL 3314420, at *17 (discussing § 1182(d)(5)(A) and citing 8 U.S.C. § 1225(b)(1)(A)(iii)(II)). And the return-to-custody phrase "may permit [Bashir] to be returned to ICE custody, but [his] case, which necessarily includes the procedures required before detention, 'shall continue to be dealt with in the same manner as that of any other applicant for admission[.]'" *Rodriguez-Acurio*, 2025 WL 3314420, at *18. And "any other applicant for admission residing in the United States . . . would be detained under § 1226." *Id.*

Other courts have found the mandatory-detention provisions of § 1225(b) do not apply to a noncitizen who was apprehended at the border but then granted release into the United States on humanitarian parole under § 1182(d)(5)(A). *E.g.*, *Martinez Gamez v. Easterwood*, No. 4:26CV3009, 2026 WL 295400, at *4 (D. Neb. Feb. 4, 2026) ("Nothing about the fact [that] Martinez Gamez was paroled into the United States upon his initial arrival changes the above determination that he is not subject to mandatory detention."); *CHIR*, 2025 WL 2192986, at *22–27; *Rodriguez v. Rokosky*, Civil Action No. 25-17419 (CPO), 2025 WL 3485628 (D.N.J. Dec. 3, 2025); *Vazquez-Rosario v. Noem*, No. 25-cv-7427, 2026 WL 196505 (E.D. Pa. Jan. 26, 2026); *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294 (E.D. Mich. Oct. 29, 2025).

For these reasons, the Court concludes that Bashir is not subject to mandatory detention under § 1225(b)(1).

### *Detention under § 1225(b)(2)*

Alternatively, Respondents argue that Bashir is subject to mandatory detention under § 1225(b)(2) because there is no dispute that he is an "applicant for admission," and

15

the fact that he has a pending asylum application means he is "seeking admission" within the meaning of the statute. (Dkt. 10 at 9–10.) As the Court has previously explained, it does not find this position persuasive. Specifically, the fact that Bashir has applied for asylum does not support mandatory detention under § 1225(b)(2). *See, e.g.*, *Ahmed M. v. Bondi et. al*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *2 (D. Minn. Jan. 5, 2026) (explaining that "several courts have determined that asylum applications filed in like circumstances do not change the outcome.") (collecting cases); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 n.7 (S.D.N.Y. 2025) ("To the extent that Respondents might point to [petitioner's] asylum application to argue that he continues to 'seek' something, what he seeks is not 'admission' or 'lawful entry' to the United States, but to obtain a lawful means to *remain* here.") (emphasis in original); *Mahamed C.A. v. Noem*, No. 25-CV-4551 (MJD/JFD), 2025 WL 3771299, at *3 (D. Minn. Dec. 16, 2025), *R. & R. adopted sub nom. Awaale v. Noem*, No. 25-cv-4551 (MJD/JFD), 2025 WL 3754012 (D. Minn. Dec. 29, 2025). Accordingly, the Court finds that Bashir is not subject to mandatory detention under § 1225(b)(2).

### Propriety of Immediate Release

The Court concludes that immediate release is appropriate in this case. Because Bashir is not properly detained under § 1225(b), his detention must be authorized, if at all under § 1226(a).[10] Respondents have not claimed to have a "warrant issued by the Attorney General" supporting Petitioner's recent arrest, nor has the government produced one to the Court. "Section 1226 provides that '*[o]n a warrant issued by the Attorney General*, an alien

---

[10] Respondents do not suggest, and there is no evidence to support a finding, that Bashir is subject to detention under § 1226(c).

16

may be arrested and detained.'" *Ahmed M.*, 2026 WL 25627, at *3. The issuance of a warrant is a prerequisite to even discretionary detention under § 1226(a), and where none is provided, immediate release is an appropriate remedy. *Id.*; *see also Juan S.R. v. Bondi*, 26-cv-05 (PJS/LIB) (Order, Dkt. 8, Jan. 12, 2026) (same). That is the proper remedy here, where Bashir is not subject to mandatory detention under § 1225(b)(1) or § 1225(b)(2), and Respondents have provided no evidence that he was arrested based on a warrant.

## ORDER

Based on the above, and on the full record before the Court, **IT IS HEREBY ORDERED THAT:**

1. Petitioner Bashir K. A.'s Amended Petition for a Writ of Habeas Corpus (Dkt. 13) is **GRANTED**.

2. The Court **DECLARES** that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(1) or § 1225(b)(2) and **ENJOINS** Respondents from denying release or other relief on the basis that he is subject to such mandatory detention.

3. The Court **ORDERS** Respondents to immediately release Petitioner, **subject only to any conditions in place prior to his arrest and no later than 5:00 p.m. on February 18, 2026**.

4. Upon his release, Respondents must return **all of Petitioner's personal effects seized as a result of his arrest, including but not limited to immigration paperwork**. His property must be returned in the same condition as it was in at the time he was arrested.

5. Finally, the Court **ORDERS** Respondents to file a notice within 24 hours of Petitioner's release, specifying the date, time, and location of his release.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 17, 2026         *s/Katherine M. Menendez*
                                Katherine M. Menendez
                                United States District Judge